# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Castle Area School District, :
                             Petitioner  :
                                          :
            v.                            :   No. 645 C.D. 2020
                                          :   Submitted: April 9, 2021
Unemployment Compensation                 :
Board of Review,                          :
                             Respondent   :


BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE J. ANDREW CROMPTON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**              **FILED:  September 23, 2021**


New Castle Area School District (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board), dated June 17, 2020, which awarded Claimant unemployment compensation benefits.  In so doing, the Board reversed the order of the Unemployment Compensation Referee (Referee), which denied Claimant benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to discharge for willful misconduct.  We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).  Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work."  Relevant to this matter, our Court has held that when an employer discharges a claimant due to an alleged criminal act like theft, acceptance into an accelerated rehabilitative disposition (ARD) program is insufficient proof that the claimant

Claimant was a custodial employee with Employer beginning in 1991 until his suspension from work on September 26, 2019.[2] (C.R. at 9, 31, 35-36; Reproduced Record (R.R.) at 2a, 41a-45a.) On September 12, 2019, the New Castle Police Department filed criminal charges against Claimant, alleging that Claimant used his access as an employee with Employer to obtain funds from a parent teacher organization "to pay his personal First Energy/Penn Power utility bills totaling $1[,]017.85."[3] (R.R. at 35a-37a.) Claimant was charged with theft, access device fraud, and criminal use of a communication facility. (C.R. at 42; R.R. at 36a.) Employer learned of the charges and subsequently suspended Claimant without pay as of September 26, 2019. (C.R. at 36.) On October 3, 2019, Employer issued to Claimant a Notice of Right to Hearing and Statement of Charges letter, alleging that Claimant engaged in improper conduct, as follows:

> That on or about January 25, 2018[,] through May 2019, [Claimant] unlawfully took, converted and otherwise exercised control over $1,017.85 from funds belonging to [a parent teacher organization] without authority or permission to do so. [Claimant] used these funds for personal expenses[,] and [Claimant's] act[ion]s or conduct has resulted in criminal charges [against him] . . . . [Claimant's] actions and conduct are a breach of trust and/or a misuse of power as an employee.

committed willful misconduct. *Reading Area Water Auth. v. Unemployment Comp. Bd. of Rev.*, 137 A.3d 658, 663 (Pa. Cmwlth. 2016) (citing *Unemployment Comp. Bd. of Rev. v. Vereen*, 370 A.2d 1228, 1230-31 (Pa. Cmwlth. 1977)).

[2] Employer suspended Claimant with pay beginning September 16, 2019, and without pay beginning September 26, 2019. (Certified Record (C.R.) at 35-36, 47.) Both Employer and Claimant reported Claimant's final day of work as September 25, 2019. (C.R. at 9, 25.)

[3] The funds were allegedly drawn from the account of the Croton Parent Teacher Organization (hereafter, parent teacher organization), which account Claimant had access to as an employee. (C.R. at 38, 42.)

2

(R.R. at 31a-32a.) The letter also provided that Claimant's "actions and conduct violated [Employer] [P]olic[y] #517," which prohibits employees from violating federal, state, or municipal laws or regulations, but it noted that Claimant had a right to a hearing before Employer's school board at which he could contest the allegations laid against him. (*Id*. at 31a-34a.) Thereafter, Claimant entered into the ARD program for first-time offenders in relation to his criminal charges, wherein, upon successful completion of the ARD program, he could have the pending charges dismissed and expunged from his record. (*See* C.R. at 50-54.) A school board hearing was held on November 25, 2019, and the school board officially terminated Claimant's employment on December 16, 2019. (R.R. at 41a-45a.)

Claimant applied for unemployment compensation benefits on December 8, 2019, stating that he was discharged by Employer because of a "wrongful accusation." (C.R. at 8-10.) Employer similarly reported that it terminated Claimant's employment, but it stated that the cause of separation was Claimant's "theft of funds from the [parent teacher] organization," as well as a violation of Employer's policy. (*Id*. at 21.) The Indiana UC Service Center (Service Center) denied benefits pursuant to Section 402(e) of the Law, concluding that Claimant's theft constituted willful misconduct. (*Id*. at 60.) Claimant appealed the Service Center's determination, and a hearing was scheduled before the Referee. (*Id*. at 64, 75.) Claimant attended the hearing accompanied by counsel, and Employer's counsel and an additional witness appeared on behalf of Employer.[4] (*Id*. at 80.)

---

[4] At the Referee hearing, Employer's counsel testified as a witness on Employer's behalf. (C.R. at 101-02.)

3

After the hearing, the Referee issued a decision, concluding that Claimant was ineligible for benefits pursuant to Section 402(e) of the Law. (R.R. at 6a-11a.) The Referee reasoned:

> [B]ased on the credibl[e] testimony of . . . [E]mployer's two witnesses as to their personal knowledge and observations[,] and due to the inferences of . . . [C]laimant's guilt of theft and [the] competent evidence that . . . [C]laimant is now participating in the ARD program as a result of criminal charges for his alleged use of checking account information belonging to the [parent teacher organization] account to pay . . . [C]laimant's personal electric utility bills, the Referee finds that . . . [C]laimant committed theft[,] which is a *per se* finding of willful misconduct.

(*Id*. at 11a.)

Claimant appealed the Referee's decision to the Board. (C.R. at 236.) The Board reversed, concluding that Employer had not met its burden to establish that Claimant engaged in the alleged willful misconduct—*i.e.*, the theft of the funds from the parent teacher organization. (R.R. at 2a-4a.) In so doing, the Board issued its own findings of fact, as follows:

1. [C]laimant worked as a full[-]time, year-round custodial employee for . . . [Employer] from June 1991 to September 26, 2019.

2. During . . . [C]laimant's employment, . . . [E]mployer maintained a written policy that prohibited employees from violati[ng] . . . federal, state[,] or applicable municipal laws or regulations and provided that the [s]uperintendent or designee [of the school district] shall prepare and promulgate disciplinary rules for violations of [Employer's] policies, rules and procedures that provide progressive penalties, including verbal warning, written warning, reprimand, suspension, dismissal or pursuit of civil and criminal sanctions.

3. [C]laimant was aware of . . . [E]mployer's policy and of [its] consequences.

4

4. [C]laimant's position required him to work in several schools for . . . [Employer], as well as within the administration building, where he had access to various buildings including rooms where checking account information belonging to the [parent teacher organization] was stored.

5. In 2019, . . . [E]mployer became aware of a pending criminal investigation by the New Castle Police Department into . . . [C]laimant's alleged wrongdoings related to use of the [parent teacher organization] checking account information to pay his personal utility bills.

6. After becoming aware of the New Castle Police Department's investigation, . . . [E]mployer initiated an internal investigation conducted by . . . [E]mployer's administrator and . . . counsel.

7. In September 2019 criminal charges were filed against . . . [C]laimant for allegedly using checking account information belonging to the [parent teacher organization] account to pay . . . [C]laimant's personal electric utility bills.

8. On September 16, 2019, during . . . [E]mployer's internal investigation, . . . [E]mployer placed . . . [C]laimant on suspension.

9. On October 3, 2019, . . . [E]mployer's counsel sent . . . [C]laimant a Notice of Right to Hearing and Statement of Charges letter.

10. In November 2019, . . . [C]laimant was being considered for the [ARD] program which, if approved, would permit . . . [C]laimant the opportunity to participate in supervised probation[.] [A]t the successful completion of the supervised probation and ARD program, . . . [C]laimant would have the opportunity to expunge any record of the . . . pending criminal charges.

11. A hearing before the . . . school board was conducted on November 25, 2019.

12. On December 16, 2019, the [s]chool [b]oard passed a vote to discharge . . . [C]laimant, . . . and found that [he] violated . . . [E]mployer's policy by violating state laws and . . . that . . . [C]laimant's actions and conduct were a breach of trust and[/]or a misuse of power as an employee.

5

13. As of December 24, 2019, . . . [C]laimant was enrolled in the ARD program for the related criminal charges and he was anticipating completion of the ARD program as of June 12, 2020.

14. [C]laimant never pled guilty to, nor has he been convicted of, any of the charges levied against him.

(*Id*. at 2a-3a.) The Board explained its rationale for reversing the decision of the Referee, writing:

> Most, if not all, of the evidence in support of . . . [E]mployer's allegation that . . . [C]laimant repeatedly stole money from the [parent teacher organization] and used the funds to pay his utility bills, is from documents that were not properly authenticated, as well as hearsay statements. [E]mployer's witnesses had no firsthand testimony concerning the allegations. [C]laimant's counsel properly objected to all of this evidence. Moreover, it is not clear from the record that when . . . [C]laimant and . . . [E]mployer entered into a stipulation regarding the exhibits to be used at the hearing before [the] school board, that . . . [C]laimant was stipulating that he had, in fact, engaged in the alleged misconduct. Finally, . . . [C]laimant's statement at the school board hearing clearly was not an apology for committing theft. Rather, it appears that [he] was apologizing for implicating others. In no way does the Board find . . . [that C]laimant's statement was an admission of guilt for stealing the funds. Finally, the courts have repeatedly held that a claimant's admittance into an ARD program does not constitute a guilty plea[,] nor is it a conviction. Therefore, benefits are granted under Section 402(e) of the Law.

(*Id*. at 4a.) Employer now petitions this Court for review.

In its brief on appeal,[5] Employer provides the following in its statement of questions involved: "Whether the [Board] made an error of law in granting unemployment benefits to Claimant when substantial evidence presented by [Employer] clearly established willful misconduct under [S]ection 402(e) [of the

---

[5] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

Law?]" (Employer's Brief at 4.) At the outset, it is somewhat unclear from this language whether Employer is attempting to argue that the Board erred in concluding there was no willful misconduct or that the record lacks substantial evidence to support the Board's findings of fact. This point is further complicated by the fact that, in its argument section, Employer abandons any substantial evidence and/or error of law issue and instead asserts that the Board capriciously disregarded evidence of Claimant's testimony and the stipulation of an exhibit at the school board hearing. As a result, the Board asserts that Employer has waived the error of law issue on appeal because the argument is not sufficiently developed in Employer's brief. In support thereof, the Board cites *Berner v. Montour Township*, 120 A.3d 433 (Pa. Cmwlth. 2015), for the proposition that "a party's failure to sufficiently develop an issue in a brief constitutes a waiver of the issue." (Board's Brief at 11-12 (citing *Berner*, 120 A.3d at 437 n.6).) The Board further argues that, because Employer does not challenge the Board's findings of fact, those factual findings are binding on appeal. (Board's Brief at 7 n.6 (citing *Salamak v. Unemployment Comp. Bd. of Rev.*, 497 A.2d 951, 954 (Pa. Cmwlth. 1985)).) We agree with the Board.

Employer provides no examples or elucidation in its brief as to how the Board erred on the law or where the record does not support the Board's factual findings. Rather, the entirety of Employer's argument concerns whether the Board capriciously disregarded relevant evidence. The error of law argument, therefore, is not sufficiently developed for appellate review, and we conclude the issue is waived. *See In re Tax Claim Bureau of Lehigh Cnty. 2012 Judicial Tax Sale*, 107 A.3d 853, 857 n.5 (Pa. Cmwlth.) ("A party's failure to develop an issue in the argument section of its brief constitutes waiver of the issue."), *appeal denied*, 117 A.3d 299 (Pa. 2015).

7

We similarly find that Employer has not challenged any specific factual finding, and the Board's findings are, therefore, binding on appeal. *Campbell v. Unemployment Comp. Bd. of Rev.*, 694 A.2d 1167, 1169 (Pa. Cmwlth. 1997).

Pennsylvania Rule of Appellate Procedure 2116 mandates, moreover, that "[n]o question will be considered [on appeal] unless it is stated in the statement of questions involved or is fairly suggested thereby." As noted above, Employer's statement of questions involved inexactly argues substantial evidence and/or error of law, but it does not set forth a question concerning capricious disregard. Nevertheless, even if Employer's statement of questions involved could be read expansively to include a capricious disregard argument, we agree with the Board's position that the evidence at issue—Claimant's testimony and the stipulation of the exhibit at the school board hearing—was clearly considered in the Board's decision, where the Board concluded that neither piece of evidence was dispositive of whether Claimant engaged in willful misconduct.

The Board is the ultimate finder of fact and is entitled to make its own determinations as to witness credibility and evidentiary weight, as well as to resolve conflicts in the evidence. *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1388-89 (Pa. 1985); *DeRiggi v. Unemployment Comp. Bd. of Rev.*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). Our standard for capricious disregard is as follows: "When determining whether the Board capriciously disregarded the evidence, the Court must decide if the Board deliberately disregarded competent evidence that a person of ordinary intelligence could not conceivably have avoided in reaching a particular result, or stated another way, if the Board willfully or deliberately ignored evidence that any reasonable person would have considered to be important." *Bennett v. Unemployment Comp. Bd. of Rev.*, 33 A.3d 133, 136 n.3 (Pa. Cmwlth. 2011), *appeal*

8

*denied*, 67 A.3d 798 (Pa. 2013) (quoting *Jackson v. Unemployment Comp. Bd. of Rev.*, 933 A.2d 155, 156 n.4 (Pa. Cmwlth. 2007)).

Employer directs that Claimant's statement at the school board hearing, which Employer characterizes as an admission of Claimant's guilt, was unjustifiably ignored by the Board in rendering its decision. Claimant made the following statement at the November 25, 2019 hearing before the school board:

> Ladies and gentlemen, members of the [school b]oard, I'm sorry that we all have to be here today and I'm sorry that this [school] district[,] that I've grown up in, that I've worked [in] for almost thirty years, has to be subject to this embarrassment. I've been with this [school] district my entire life and I am embarrassed by this whole thing. On advice of counsel I'm very limited [i]n what I can discuss here today, beyond how much I care for this [school] district and how much I'm proud of and need my employment here. What I can say is that if it was ever perceived that I was attempting to accuse or that I did accuse someone of the things that I was being accused of[,] I'm truly sorry for that. I never meant to . . . accus[e] anybody of anything. I certainly wouldn't wish anybody to have to go through what I've gone through with these allegations in the past six months. Especially not anybody in this room or anybody [that] someone in this room cares about. For that I am truly sorry. Thank you for listening to me. And I am pleading with you to let me continue my employment with . . . [Employer]. I will not make you regret it. Thank you.

(R.R. at 26a-27a.)

Contrary to Employer's averment, however, the Board directly addressed Claimant's testimony before the school board in its decision, writing: "[C]laimant's statement at the school board hearing clearly was not an apology for committing [the] theft. Rather, it appears that . . . [C]laimant was apologizing for implicating others. In no way does the Board find . . . [that C]laimant's statement was an admission of guilt for stealing the funds [from the parent teacher organization]." (R.R. at 4a.) Based on this language, it is clear the Board considered Claimant's

9

testimony at the school board hearing and concluded that it was not dispositive on the issue of Claimant's guilt of the theft of the funds. As a result, we conclude the Board did not "willfully or deliberately ignore[]" this evidence. *Bennett*, 33 A.3d at 136 n.3.

Next, as it concerns the stipulation of an exhibit between the parties, counsel for Employer and counsel for Claimant agreed prior to the school board hearing to stipulate to seven exhibits. (R.R. at 18a.) The exhibits included, *inter alia*, a copy of the New Castle Police Department criminal complaint and the affidavit of probable cause.[6] (R.R. at 19a.) When this exhibit was officially admitted at the hearing, Employer's counsel stated:

> Exhibit No. 4 is a copy of the [New Castle Police Department] criminal complaint and the affidavit of probable cause. Now, this is where the stipulation [becomes relevant][.] Officer Buzzwell . . . is here. He's in an anteroom at the moment. [Counsel for Claimant has] indicated that he has literally no questions [for the Officer]. [As such, Officer Buzzwell] would be testifying [directly] from th[e] affidavit. So, we are stipulating and putting that criminal complaint and affidavit into evidence as an agreed-upon document.

(*Id.*)

In its brief, Employer essentially argues the foregoing stipulation is "tantamount to an admission of the facts" concerning Claimant's theft of funds from the parent teacher organization, and the Board, therefore, erred in disregarding this

---

[6] The exhibits included: (1) the letter suspending Claimant with pay, (2) the Notice of Right to Hearing and Statement of Charges letter suspending Claimant without pay, (3) a notice of charges letter from Employer after Employer engaged in its own internal investigation into Claimant's conduct, (4) a copy of the New Castle Police Department criminal complaint and the affidavit of probable cause, submitted in lieu of testimony from the charging officer, (5) a document with Employer's own calculations of the wages that were withheld from Claimant during his suspension, (6) a letter from the parent teacher organization indicating that Claimant entered into the ARD program, and (7) a copy of the common pleas court docket. (R.R. at 18a-21a.)

competent and relevant evidence.  (*See* Employer's Brief at 6, 9.)  Again, however, the Board did, in fact, address this evidence in its decision, finding that "it [was] not clear from the record that when . . . [C]laimant and . . . [E]mployer entered into a stipulation regarding the exhibits to be used at the hearing before [the] school board, that . . . [C]laimant was stipulating that he had, in fact, engaged in the alleged misconduct."  (R.R. at 4a.)  This language clearly shows that the Board did not "deliberately disregard[]" the stipulated exhibit.[7]  *Bennett*, 33 A.3d at 136 n.3.  Rather, like Claimant's statement at the school board hearing, the Board clearly considered the evidence and concluded that it was not dispositive on the question of Claimant's guilt of the theft of funds.

Accordingly, the Board did not capriciously disregard the evidence of record, and we, therefore, affirm the order of the Board.

P. KEVIN BROBSON, President Judge

---

[7] In the statement of facts section of its brief, Employer also seems to argue that "the Board completely discounts or ignores . . . Employer's two witnesses['] . . . personal knowledge and observations."  (Employer's Brief at 7.)  While this was not raised in the argument section of Employer's brief, we nevertheless note that the Board also addressed this evidence, finding that "[E]mployer's witnesses had no firsthand testimony concerning the allegations [against Claimant]" and "[C]laimant's counsel properly objected to [the testimony as hearsay]." (R.R. at 4a.)  Hence, as with the other evidence Employer challenges, the Board clearly considered and discounted the testimony of Employer's witnesses.  Accordingly, even if this argument was properly raised, we would nonetheless conclude that the evidence was not capriciously disregarded by the Board.  *Bennett*, 33 A.3d at 136 n.3.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Castle Area School District,    :
                   Petitioner    :
                                    :
        v.                   :    No. 645 C.D. 2020
                                      :
Unemployment Compensation    :
Board of Review,                  :
                   Respondent   :

# **O R D E R**

AND NOW, this 23rd day of September, 2021, the order of the Unemployment Compensation Board of Review, dated June 17, 2020, is hereby AFFIRMED.

 

 

 

                                                                         
_____
P. KEVIN BROBSON, President Judge

New Castle Area School District, :
              Petitioner :
                           :
             v. :
                           :
Unemployment Compensation :
Board of Review, : No. 645 C.D. 2020
              Respondent : Submitted: April 9, 2021


BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COVEY                               FILED: September 23, 2021


        Respectfully, I disagree with the Majority's conclusions: New Castle Area School District "[(]Employer[)] provides no examples or elucidation in its brief as to how the [Unemployment Compensation (UC) Board of Review (UCBR)] erred on the law . . . . The error of law argument, therefore, is not sufficiently developed for appellate review, and we conclude **the issue is waived**[,]" *New Castle Area Sch. Dist. v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 645 C.D. 2020, filed September 23, 2021), slip op. at 7 (emphasis added); and "Employer's statement of questions involved inexactly argues substantial evidence and/or error of law, but it **does not set forth a question concerning capricious disregard**." *Id*. at 8 (emphasis added). Further, I disagree with the Majority's ruling that "the [UCBR] did not capriciously disregard the evidence of record[.]" *Id*. at 11. I believe that a reasonable person considering: John J. Beshero's (Claimant) testimony at the New Castle Area School Board (School Board) hearing, i.e., Claimant apologized for the embarrassment caused

to Employer and acknowledged his own embarrassment; and the stipulation of an exhibit offered at the School Board hearing, i.e., Claimant stipulated that if the police officer who wrote the criminal complaint and Affidavit of Probable Cause was called, he would testify accordingly, would find that Claimant committed willful misconduct. Accordingly, I would reverse the UCBR's order.

Claimant worked as a full-time, year-round custodial employee for Employer from June 1991 to September 26, 2019. *See* Reproduced Record (R.R.) at 2a (UCBR Dec. Finding of Fact (FOF) 1). During Claimant's employment, Employer maintained a written policy that prohibited employees from violating federal, state or applicable municipal laws or regulations. *See id*. (FOF 2). Claimant was aware of Employer's policy and the consequences of violating the policy. *See id*. (FOF 3). Claimant's position required him to work in several of Employer's buildings, including the administration building, where he had access to rooms in which checking account information belonging to the Croton Area Parent Committee (PTC) was stored. *See id*. (FOF 4).

In 2019, Employer became aware that the New Castle Police Department was conducting a criminal investigation into Claimant's alleged use of the PTC checking account information to pay his personal utility bills. *See* R.R. at 2a-3a (FOF 5). Thereafter, Employer initiated an internal investigation conducted by Employer's administrator and Employer's counsel. *See* R.R. at 3a (FOF 6). In September 2019, Claimant was criminally charged for using PTC's checking account information to pay his personal electric utility bills. *See id*. (FOF 7). On September 16, 2019, Employer suspended Claimant pending its internal investigation. *See id*. (FOF 8).

On October 3, 2019, Employer's counsel sent Claimant a Notice of Right to Hearing and Statement of Charges letter. *See id*. (FOF 9). In November 2019, Claimant was being considered for the Accelerated Rehabilitative Disposition (ARD) program, which, if approved, would permit Claimant the opportunity to participate in

supervised probation and, at the successful completion of the supervised probation and ARD program, Claimant would have the opportunity to expunge any record of the related pending criminal charges. *See id.* (FOF 10). The School Board conducted a hearing on November 25, 2019. *See id.* (FOF 11). On December 16, 2019, having found that Claimant violated Employer's policy by violating state laws and school laws, and that his actions were a breach of trust and/or a misuse of power as an employee, Employer's School Board discharged Claimant. *See id.* (FOF 12). Claimant was enrolled in the ARD program on December 24, 2019, and had an anticipated completion date of June 12, 2020. *See id.* (FOF 13). Claimant never pled guilty to, nor has he been convicted of, any of the charges against him. *See id.* (FOF 14).

Preliminarily, the Majority incorrectly concludes that Employer waived the capricious disregard of evidence issue. The Pennsylvania Supreme Court has declared:

> Since an adjudication cannot be in accordance with law if it is not decided on the basis of law and facts properly adduced, . . . review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the [C]ourt.

*Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).

In its "STATEMENT OF THE QUESTIONS INVOLVED [(Statement of Questions)]," Employer sets forth: "Whether **the [UCBR] made an error of law in granting unemployment benefits to Claimant when substantial evidence presented by [Employer] clearly established willful misconduct** under [S]ection 402(e) [of the UC Law]." Employer Br. at 4 (emphasis added).

> If no evidence was presented to support the prevailing party, there is no evidence upon which to apply the "substantial evidence" test; i.e., it is impossible to find substantial

evidence to support a position for which no evidence was introduced. In such cases, therefore, the appropriate scope of review, . . . is whether the agency erred as a matter of law or capriciously disregarded competent evidence.

*Leon E. Wintermyer, Inc.*, 812 A.2d at 486 (italics and citation omitted) (quoting *Russell v. Workmen's Comp. Appeal Bd. (Volkswagen of Am.)*, 550 A.2d 1364, 1365 (Pa. Cmwlth. 1988)). Here, Claimant did not present any evidence before the Referee. "As th[e Pennsylvania Supreme] Court has explained previously, the substantial-evidence facet of the appellate review of administrative agency adjudications simply may not apply to scenarios in which a prevailing party presented no evidence*." IA Constr. Corp. v. Workers' Comp. Appeal Bd. (Rhodes)*, 139 A.3d 154, 162 (Pa. 2016).

In its brief, Employer argues, in pertinent part:

The entire, but short transcript of the [D]ue [P]rocess hearing was offered and admitted before the Referee and is made part of the reproduced record. Contained therein is [] Claimant's statement regarding [Employer's] charges and a stipulation between [the] parties which is tantamount to an admission of the facts.

Respectfully, **the [UCBR] ignored this uncontradicted evidence** in overturning the Referee's decision. Also, the [UCBR] did not take into consideration the statement of Claimant given to the [UCBR] at the time of the Due Process hearing. When reviewing the evidence in its totality, **the [UCBR] ignored substantial creditable evidence of willful misconduct**.

Employer Br. at 9 (emphasis added).

Pennsylvania Rule of Appellate Procedure 2116(a) provides, in relevant part:

The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. **The statement will be deemed to include every subsidiary question fairly comprised therein**. No question

will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.

Pa.R.A.P. 2116(a) (emphasis added). A review of Employer's Statement of Questions and corresponding argument makes clear that the error of law argument, i.e., the UCBR erred by granting UC benefits when Employer clearly established willful misconduct, was sufficiently developed for appellate review, and the capricious disregard argument was fairly suggested by the Statement of Questions.[1] Accordingly, Employer did not waive the capricious disregard of evidence issue.

Concerning the Majority's ruling that the UCBR did not capriciously disregard the record evidence,

[t]his Court has defined the term "willful misconduct" to mean:

(1) the wanton and willful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

K[y.] *Fried Chicken of Altoona, Inc. v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], . . . 309 A.2d 165, 168-69 ([Pa. Cmwlth.] 1973). "The burden of proving willful misconduct rests with the employer." *Walsh v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], 943 A.2d 363, 368 (Pa. Cmwlth. 2008).

*Geisinger Health Plan v. Unemployment Comp. Bd. of Rev.*, 964 A.2d 970, 973-74 (Pa. Cmwlth. 2009).

---

[1] In addition, the Majority agrees with the UCBR that, because Employer does not challenge the UCBR's findings of fact, those factual findings are binding on appeal. However, Employer does not dispute the factual findings, only the conclusions drawn therefrom.

"Circumstantial evidence, if substantial, is sufficient to support a finding of willful misconduct." *Ruiz v. Unemployment Comp. Bd. of Rev.*, 887 A.2d 804, 808 (Pa. Cmwlth. 2005); *see also Dunkleberger v. Unemployment Comp. Bd. of Rev.*, 467 A.2d 653 (Pa. Cmwlth. 1983) (circumstantial evidence that the claimant embezzled money from the employer's funds was sufficient to support a finding of willful misconduct).[2] "[E]vidence is substantial where it so preponderates in favor of a conclusion that it outweighs, in the mind of the fact[-]finder, any inconsistent evidence and reasonable inferences drawn therefrom." *Wysocki v. Unemployment Comp. Bd. of Rev.*, 487 A.2d 71, 72-73 (Pa. Cmwlth. 1985).

At the Referee hearing, Employer introduced the School Board hearing transcript into evidence. Therein, Claimant stipulated that, if the police officer who wrote the criminal complaint and Affidavit of Probable Cause was called, he would testify accordingly. Specifically, Employer's counsel stated at the School Board hearing that the police officer was present and "[Claimant's counsel] indicated that he ha[d] literally no questions. . . . So, we are stipulating and putting that criminal complaint and [A]ffidavit [of Probable Cause] into evidence as an agreed-upon document."[3] R.R. at 19a. The School Board hearing transcript was accepted into evidence as Employer's Exhibit 1. *See* Certified Record at 154. The Affidavit of Probable Cause provided, in relevant part:

---

[2] In *Dunkleberger*, the employer presented no specific testimony regarding the total amount of money alleged to have been embezzled. Rather, the record disclosed systematic and schematic discrepancies in the business records that the claimant had the sole responsibility to keep. The employer testified that, had these discrepancies been mere clerical errors, a cash surplus would logically have appeared in banking records. The employer testified that none did, and the discrepancies could not be reconciled. The *Dunkleberger* Court determined that the evidence, while circumstantial, was sufficient to support a finding of willful misconduct. Here, Claimant had access to the account numbers for the missing funds, stipulated to the police officer's Affidavit of Probable Cause, paid the funds back, and apologized for the embarrassment caused by the missing funds.

[3] When asked if that stipulation was accurate, Claimant's Counsel responded: "That's correct." R.R. at 19a.

I advised [Claimant] of the information we had, that his wife's First Energy bill had been paid three times out of the PTC account. [**Claimant**] **stated that the account is his. He said he pays the electric bill at his residence and pays by the automated phone system. He said that it must have been a mistake and the account numbers must be close and he simply typed in a wrong digit. He advised there was no way he did this**[,] **and it is a mistake. He then said that his personal GNC or PNC account numbers must have been close to the PTC account numbers. He then asked if the transaction occurred over the phone and I advised I did not know**, **it either happened over the phone or via computer**, **but it was an electronic check.** [**Claimant**] **stated**[:] "[Y]**eah**, [**i**]**t happened over the phone**, **so I punched the numbers in**[.]"[] I was unable to determine at that time what the account number was for the PTC account. I asked [Claimant] if he wanted to check with his wife and make sure she didn't make the transactions. He said that she didn't take care of the electric bill, he did. She has no idea what goes on with the bills. I asked him how he didn't notice several hundred dollars in bills not coming out of his account and he replied that he didn't pay attention.

**During the interview** [**Claimant**] **said to me**[:] "**I didn't knowingly do this**" **and** "[**i**]**t could be a mistake**[;] **I'll pay for it**[.]"[] He was advised that restitution would not stop the investigation.

On 09/11/2019[,] Detective Crum advised me that a party had reached out to him advising that [Claimant] wished to speak with him relative to this case. I requested that [Corporal] Hallowich attend this meeting to avoid any conflict of interest.

They met with [Claimant] in [Employer's] supply garage on Taylor St[reet]. [Claimant] approached them and said[:] "I have some questions for you." [Claimant] then went on to explain that he wanted to know what he should do about this case. It should be noted that Officers [we]re aware that [Claimant] ha[d] retained an attorney and did not ask him any questions during this meeting. [**Claimant**] **then went on to state that he was told by someone within the school district administration that the PTC would be willing to accept re-payment to settle the case**. [Claimant] was advised that along with that payment the victims would most

likely want some type of admission as well and further advised that we could not make that decision because it would ultimately be up to the victims. [**Claimant**] **stated that he would repay the money**, **but that he would not admit to any wrongdoing**. [Claimant] repeatedly asked what he should do and was told each time that he would need to speak with the case officer, [Corporal] Buswell. [**Claimant**] **stated numerous times during the interview that he wanted to pay the PTC the missing money and then the whole case be dismissed**. [**Claimant**] **then stated that he thought that someone was "setting him up**." [**Claimant**] **continued stating over and over that he did not steal any money from the PTC account**. [Claimant] eventually stated that he had "people interested in going after GNC credit union" because the confusion had to occur between GNC[,] FCU and Penn Power. [Claimant] was again advised that he needed to speak with [Corporal] Buswell to settle the case, who in turn would have to speak to the victims.

R.R. at 39a-40a (emphasis added). Despite that the police officer was present at the School Board hearing, Claimant chose to have the Affidavit of Probable Cause admitted into evidence, rather than question the police officer about its contents.

Also included in the School Board hearing transcript was Claimant's statement to the School Board, wherein Claimant declared:

Ladies and gentlemen, members of the [School] Board, **I'm sorry that we all have to be here today and I'm sorry that this district that I've grown up in**, **that I've worked for almost thirty years**, **has to be subject to this embarrassment**. **I've been with this district my entire life and I am embarrassed by this whole thing**. **On advice of counsel I'm very limited on what I can discuss here today**, beyond how much I care for this district and how much I'm proud of and need my employment here.

What I can say is that if it was ever perceived that I was attempting to accuse or that I did accuse someone of the things that I was being accused of I'm truly sorry for that. **I never meant to make it sound like I was accusing anybody of anything**. I certainly wouldn't wish anybody to have to go through what I've gone through with these allegations in

the past six months. Especially not anybody in this room or anybody whom someone in this room cares about. For that[,] I am truly sorry.

Thank you for listening to me. And I am pleading with you to let me continue my employment with [Employer]. I will not make you regret it. Thank you.

R.R. at 36a-37a (emphasis added). Lastly, Claimant's counsel stated at the School Board hearing: "[Claimant] has paid back every penny that's been alleged to be taken with regard[] to this matter. And [Employer] and the [PTC] ha[ve] that money back." R.R. at 25a.

The UCBR found as a fact that Employer discharged Claimant because he violated Employer's policy by violating state laws and school laws, and that Claimant's actions and conduct were a breach of trust and/or a misuse of power as an employee. *See* R.R. at 3a (FOF 12). Such misconduct clearly falls within this Court's definition of willful misconduct. *See Geisinger Health Plan*.

However, the UCBR concluded:

[I]t is not clear from the record that when [] [C]laimant and [] [E]mployer entered into a stipulation regarding the exhibits to be used at the hearing before [the] [S]chool [B]oard, that [] [C]laimant was stipulating that he had, in fact, engaged in the alleged misconduct. [Further,] [] [C]laimant's statement at the [S]chool [B]oard hearing clearly was not an apology for committing theft. Rather, it appears that [] [C]laimant was apologizing for implicating others. In no way does the [UCBR] find [] [C]laimant's statement was an admission of guilt for stealing the funds. Finally, the courts have repeatedly held that a claimant's admittance into an ARD program does not constitute a guilty plea nor is it a conviction. Therefore, [UC] benefits are granted under Section 402(e) of the Law.

R.R. at 4a. The Majority determined: "Based on this language, it is clear the [UCBR] considered Claimant's testimony at the [S]chool [B]oard hearing and concluded that it was not dispositive on the issue of Claimant's guilt of the theft of the funds[,]" and

AEC - 9

"like Claimant's statement at the [S]chool [B]oard hearing, the [UCBR] clearly considered the [stipulated exhibit] and concluded that it was not dispositive on the question of Claimant's guilt of the theft of funds." *New Castle Area Sch. Dist.*, slip op. at 9, 11.

The UCBR held that Employer did not meet its burden of proving willful misconduct because Claimant did not stipulate to engaging in misconduct, did not apologize for committing theft, and did not enter a guilty plea nor was convicted of theft. However, Claimant need not be convicted of theft for Employer to prove willful misconduct. "A finding that [Claimant] stole . . . is not necessary to make him ineligible for [UC] benefits. [Employer's] burden was not to prove theft . . . , but rather to prove willful misconduct as that term has been defined by the courts." *Unemployment Comp. Bd. of Rev. v. Atl. Richfield Co.*, 349 A.2d 496, 498 (Pa. Cmwlth. 1975).

Here, the UCBR ignored the fact that, rather than present a defense at the School Board hearing, Claimant stipulated to the entry of the Affidavit of Probable Cause. In addition, the UCBR ignored that Claimant paid the stolen funds back to the PTC. Moreover, the UCBR disregarded the fact that, in addition to apologizing for being perceived as accusing others of the theft, which he in fact did, Claimant also acknowledged and apologized for the embarrassment he caused himself and Employer.[4]

> [This Court] may conclude that a fact-finder has capriciously disregarded competent evidence "when the unsuccessful party below has presented 'overwhelming evidence' upon which the adjudicator could have reached a contrary

---

[4] Notably, the UCBR also ignored the fact that when Employer questioned Claimant at the Referee hearing, Claimant invoked his Fifth Amendment privilege against self-incrimination rather than answer any questions. The Referee acknowledged the adverse interest properly drawn therefrom. *See Kennett Square Specialties v. Workers' Comp. Appeal Bd. (Cruz)*, 31 A.3d 325 (Pa. Cmwlth. 2011). The UCBR, however, did not do so.

conclusion, and the adjudicator has not satisfactorily addressed that evidence by resolving conflicts in the evidence or making credibility determinations that are essential with regard to the evidence." *Balshy v.* [*Pa.*] *State Police*, 988 A.2d 813, 835-36 (Pa. Cmwlth. 2010) (quoting *Grenell v. State Civ*[.] *Serv*[.] *Comm*[*'n*], 923 A.2d 533, 538 (Pa. Cmwlth. 2007)). "In other words, where there is strong 'critical' evidence that contradicts evidence supporting a contrary determination, the adjudicator must provide an explanation as to how it made its determination." *Id*. at 836.

*Kiskadden v. Pa. Dep't of Env't Prot.*, 149 A.3d 380, 401 (Pa. Cmwlth. 2016).

Here, the UCBR has disregarded the above-quoted "strong 'critical' [circumstantial] evidence," and "has not satisfactorily addressed that evidence." *Id*. (quoting *Balshy*, 988 A.2d at 835-36*).* Accordingly, because I believe that Employer did not waive the capricious disregard of evidence issue, and Employer "presented 'overwhelming [circumstantial] evidence' upon which the [UCBR] could have reached a contrary conclusion," *id*., I would reverse the UCBR's order.

_____
ANNE E. COVEY, Judge
